UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.        **Case No. : 8:06-CR-104-T-27EAJ**

**JOEY K. LANSING,**

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Before the court are Defendant's **Motion to Dismiss for Speedy Trial Violation (Statutory and Constitutional) or in the alternative Motion for Kastigar Hearing and Motion to Dismiss** (Dkt. 8), Defendant's **Notice of Filing Attachments** (Dkt. 12), Defendant's **Affidavit** (Dkt. 24), the Government's **Response to Defendant's Motion to Dismiss Indictment Based upon Speedy Trial and Motion for Kastigar Hearing** (Dkt. 13), and the Government's **Notice of Filing Documents** (Dkt. 27).[1] The undersigned heard oral argument on Defendant's motion at a hearing on July 27, 2006. For the reasons stated herein, I recommend that the motion be denied without conducting a full Kastigar hearing.

Defendant is charged with one count of conspiring to prepare and submit false, fictitious, and fraudulent federal income tax returns for himself and others, in violation of 18 U.S.C. § 286, and four counts of failing to make an income tax return to the Internal Revenue Service, in violation of 26 U.S.C. § 7203. (Dkt. 1).

---

[1] This matter was referred to the undersigned by the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 6.01(b) M.D. Fla. for a hearing and issuance of a Report and Recommendation. (Dkt. 20).

I.      **FINDINGS OF FACT**

In February 2003, after receiving a "target letter" stating that he was the subject of a grand jury investigation, Defendant agreed to cooperate with the Government, including submitting himself to a de-briefing by the U.S. Attorney's Office and the Internal Revenue Service. Defendant gave a series of statements to Government agents, including one on February 20, 2003, pursuant to a proffer agreement.

As part of his proffer, Defendant also turned over approximately "sixteen hundred files" to the Government and a CD containing a list of the files on his computer hard drive, along with various audio and video materials; Defendant asserts he did not make a copy of the files he gave to the Government. The Government currently maintains possession of the files Defendant proffered and allows defense counsel access to the files.[2]

> Defendant's proffer agreement with the Government provided that:
>
> (a) The Government will not use the statements or information directly as evidence against Mr. Lansing in any case-in-chief against him.
> (b) The Government may use information derived from the debriefing directly or indirectly for the purpose of obtaining leads to other evidence, which evidence may be used by the Government at any prosecution brought by the Government.
> (c) The Government may use Mr. Lansing's statements or information and all evidence obtained directly or indirectly therefrom for the purpose of cross-examination of Mr. Lansing should he testify at any trial or other proceeding, or for the purpose of rebuttal.

(Dkt. 12, Attachment 2, ¶ 3). This proffer agreement grants Defendant "use" immunity but not "derivative use" immunity.

Defendant was indicted on August 29, 2003. See United States v. Lansing, 8:03-cr-144-T-

---

[2] The Government states that the proffered documents are contained in four boxes and that some of the files are very thin or appear to have been "purged" by Defendant.

24MAP. Shortly thereafter, on September 17, 2003, Defendant filed a motion for a <u>Kastigar</u> hearing, and the Government conceded that information obtained during Defendant's proffer had been used directly as evidence to obtain the indictment. On October 9, 2003, the District Judge granted the Government leave to file a dismissal without prejudice of the indictment pending against Defendant and indicated that upon filing of the dismissal, the court would deny Defendant's motion to dismiss as moot. The Government filed a motion to dismiss without prejudice on January 6, 2004, which the District Judge granted on January 8, 2004.[3] Defendant was indicted in the current action on March 28, 2006 and his initial appearance was held on March 31, 2006. (Dkts. 1, 4). Defendant was arraigned on April 12, 2006; he filed the instant motion to dismiss on the same day, April 12, 2006. (Dkts. 6, 8).

As hereafter discussed, the evidence reveals that Defendant's allegations of a speedy trial violation (statutory and constitutional) as well as his claim of a <u>Kastigar</u> violation in the instant case are not borne out by the record and are without merit.

**II.    CONCLUSIONS OF LAW**

   **1. <u>Parties' Contentions</u>**

Defendant argues that: (1) the current indictment violates the Speedy Trial Act, 18 U.S.C. § 3161, and his Sixth Amendment right to trial; and (2) the indictment was based on information Defendant provided during his proffer, in violation of <u>United States v. Kastigar</u>, 406 U.S. 441 (1972). Defendant contends that the Government's delay of over two years between the 2003 indictment and the 2006 indictment is well beyond the 70 days allowed by the Speedy Trial Act.

---

[3] Defense counsel conceded at oral argument that he knew the Government's delay in filing the dismissal was due to the assigned AUSA being on maternity leave between November 2003 and January 2004.

3

Under the Government's calculations, 18 days ran on the speedy trial clock from the first indictment (on August 29, 2003) to the filing of Defendant's motion to dismiss (on September 16, 2003). The Government excludes the time during which no indictment was pending. Since Defendant was scheduled to be arraigned on the second indictment on April 12, 2006 and filed the current motion to dismiss on that same day, the Government asserts that no time has run on the speedy trial clock in the current case. In the alternative, the Government claims that the filing of a new indictment against Defendant began a new 70-day speedy trial clock.

Defendant also protests that the delay violates his rights under the Sixth Amendment of the United States Constitution as it has created actual prejudice against Defendant. In support of this argument, Defendant states that several of the files proffered in 2003 are now missing or incomplete, that defense counsel will have greater difficulty in locating witnesses who may have moved, and that Defendant was deprived of access to the proffered materials for over two years. The Government asserts that Defendant has not shown actual prejudice or a deliberate design by the government to gain a tactical advantage, as required to demonstrate an unconstitutional pre-indictment delay. The Government also submits a letter to defense counsel dated September 19, 2003, in which it invites defense counsel to inspect and copy materials which were obtained from Defendant. (Dkt. 27, Attachment 1).[4]

Finally, Defendant argues that Count 1 of the current indictment is identical to a count brought in the 2003 indictment and that the factual basis for Counts 2-5 is derived from Defendant's proffer in violation of United States v. Kastigar, 406 U.S. 441 (1972). The Government states that

---

[4] At the hearing on July 27, 2006, defense counsel stated that his client had not kept a copy of the documents provided to the government pursuant to the proffer. The Government's notice of filing was subsequent to the oral argument.

in obtaining the 2006 indictment it made only derivative use of the information disclosed by Defendant in accordance with the proffer agreement and has filed under seal the testimony of Agent Tammy Tomlins which was given before the grand jury that returned the 2006 indictment. The Government maintains that Defendant is not entitled to a full Kastigar hearing because Defendant has alleged only a speculative possibility of taint, but if the court determines that a Kastigar hearing is necessary, the Government requests that the hearing be conducted in camera in order "to discourage fishing expeditions for grand jury material based upon speculation." (Dkt. 13 at 4).

### 2. Speedy Trial Issues

#### a. Statutory Speedy Trial Issue

The Speedy Trial Act provides, in relevant part, that:

> In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information and indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1). However, when an indictment is dismissed upon the Government's motion and a second indictment is later filed for the same offense, the period of delay is excluded "from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge." 18 U.S.C. § 3161(h)(6); see United States v. MacDonald, 635 F.2d 1115, 1118 (4th Cir. 1980) ("the period between dismissal of the first indictment and the return of the second is not counted") (citing United States v. Dennis, 625 F.2d 782, 793 (8th Cir. 1980)). This provision excludes from the speedy trial calculation the time between dismissal of the first indictment and filing of the second indictment; the plain language of the statute belies Defendant's statutory speedy trial argument.

The Eleventh Circuit has held that the Speedy Trial Act's limitations apply only when the defendant is under arrest or under indictment. United States v. Godoy, 821 F.2d 1498, 1506 n.2 (11th Cir. 1987) (citing United States v. Puett, 735 F.2d 1331, 1333-34 (11th Cir. 1984)); see also United States v. Kelly, 45 F.3d 45, 48 (2nd Cir. 1995) ("where an indictment is dismissed at the government's request and a second indictment later filed . . . the speedy trial clock for charges carried over from the first indictment stops on the date that indictment is dismissed and does not begin to run again until after the defendant's first judicial appearance on the second indictment, at which time the clock resumes from the point at which it was stopped"). Thus for charges brought against Defendant in the 2003 indictment, the speedy trial clock stopped at 18 days when the first indictment was dismissed.

Following Defendant's second indictment on March 28, 2006, his initial appearance was on March 31, 2006. Since Defendant's appearance before a judicial officer occurred after his indictment, under 18 U.S.C. § 3161(h)(6) the speedy trial clock began again on the date of Defendant's initial appearance in the Orlando Division of the Middle District of Florida on March 31, 2006.[5] United States v. Wilkerson, 170 F.3d 1040, 1042 (11th Cir. 1999) (for purposes of 18 U.S.C. § 3161(c)(1), a "court in which such charge is pending" is a court in the same district as the charging district); United States v. Montoya, 827 F.2d 143, 152 (7th Cir. 1987) (same). The speedy

---

[5] The speedy trial clock began again for the same offense that was originally brought in the 2003 indictment and for any offense that was required to be joined with that offense. 18 U.S.C. § 3161(h)(6). The undersigned accepts for the purposes of this Report and Recommendation Defendant's assertion that Count 1 of the 2006 indictment is identical to the 2003 indictment. However, Defendant has not shown that Counts 2-5 of the current indictment, for failing to make an income tax return in various years, were required to be joined with that offense. Thus the speedy trial clock began for these charges when Defendant first appeared before the judicial officer on March 31, 2006 and only 12 days had passed when Defendant's motion to dismiss tolled the clock on April 12, 2006.

trial clock ran for a 12 day period from Defendant's initial appearance on March 31, 2006 to April 12, 2006, when Defendant's motion to dismiss again tolled the clock. See 18 U.S.C. § 3161(h)(1). Together with the 18 days which ran under the first indictment, only a total of 30 days have run under the applicable provisions of the Speedy Trial Act. Therefore Defendant has not established a statutory speedy trial violation.

      b. Constitutional Speedy Trial Issue

To show that a pre-indictment delay violated his due process rights, Defendant must establish: (1) actual prejudice to his defense from the delay, and (2) that the delay resulted from a deliberate design by the government to gain a tactical advantage. United States v. Thomas, 62 F.3d 1332, 1339 (11th Cir. 1995) (citing United States v. LeQuire, 943 F.2d 1554, 1560 (11th Cir. 1991), cert. denied, 505 U.S. 1223 (1992); United States v. Reme, 738 F.2d 1156, 1163 (11th Cir. 1984), cert. denied, 471 U.S. 1104 (1985)). In Thomas, the Eleventh Circuit held that a 55-month pre-indictment delay did not violate the defendant's due process rights because the defendant did not prove the delay was intentional for a tactical advantage. Id. at 1340.[6]

"Actual prejudice" to the defendant from pre-indictment delay does not include "mere loss of testimony," which is generally guarded against by the statute of limitations. United States v. Dudden, 65 F.3d 1461, 1466 (9th Cir. 1995) (citation omitted); United States v. Corbin, 734 F.2d 643, 648 (11th Cir. 1984) ("faded memories" alone do not amount to actual prejudice resulting from pre-indictment delay); United States v. Radue, 707 F.2d 493, 495 (11th Cir. 1983) (general allegation of loss of witnesses is insufficient to show actual prejudice from pre-indictment delay).

---

[6] The Eleventh Circuit noted that "even where the defendant has been prejudiced by preaccusation delay, if it is investigative delay the defendant has not been deprived of due process." Thomas, 62 F.3d at 1339 (citations omitted).

Rather, the defendant must show through "definite and non-speculative evidence how the loss of a witness or evidence is prejudicial to the defendant's case." United States v. Huntley, 976 F.2d 1287, 1290 (9th Cir. 1992).

Defendant alleges that the Government has lost some of the files Defendant proffered and that Defendant benefits from a presumption that the delay is excessive because it was longer than one year. The Government disputes that any files have been lost. However, Defendant does not assert that the loss of a particular witness or a specific piece of evidence creates actual prejudice against Defendant nor does Defendant state how the lost files would have been exculpatory or whether the information contained within the files is otherwise unavailable.[7] See Corbin, 734 F.2d at 648. The cases that Defendant cites for a presumption of excessive delay deal with a post-indictment delay rather than a pre-indictment delay. Defendant has not provided legal authority for the proposition that a pre-indictment delay of greater than one year carries with it a similar presumption. Defendant has not otherwise shown actual prejudice sufficient to meet the first prong of the constitutional speedy trial test for pre-indictment delay laid out in Thomas.

Defendant conceded at oral argument that he does not claim that the government deliberately manufactured the delay. Thus Defendant has not met the second prong of the Thomas test: a showing that the delay resulted from a deliberate design by the government to gain a tactical advantage. Accordingly, Defendant has not demonstrated that the Government violated his constitutional right to a speedy trial.

---

[7] There is a factual dispute on this matter. The Government disagrees that any files were lost. However, it is not necessary to resolve this dispute over evidence pertinent to actual prejudice because Defendant has made no showing of deliberate design for tactical advantage as required under the second prong of the analysis.

### 3. **Kastigar Hearing**

Defendant urges that because he proffered information "under a grant of immunity," he is entitled to a Kastigar hearing at which the Government bears the burden of proving that all the evidence to be used against Defendant was derived from legitimate independent sources. (Dkt. 8 at 3-4). A Kastigar hearing and its attendant burden of proof are triggered when a defendant testifies under a grant of both use and derivative immunity. See, e.g., Murphy v. Waterfront Comm'n of New York Harbor, 378 U.S. 52, 79 n.18 (once a defendant has demonstrated that he testified under a grant of use and derivative use immunity to matters related to federal prosecution, the government bears the burden of showing that the evidence used against the defendant is not tainted); United States v. Smith, 452 F.3d 323, 337 (4th Cir. 2006).

Such is not the case here, where Defendant was specifically provided only use immunity in his proffer agreement, not derivative use immunity. Defense counsel conceded at oral argument that the proffer agreement provided only derivative use immunity for his client. These facts do not automatically necessitate a Kastigar hearing.

Courts have sometimes merged the concepts of use immunity and derivative use immunity. See, e.g., United States v. Harvey, 869 F.2d 1439, 1444-45 (11th Cir. 1989) (not distinguishing between use immunity and derivative use immunity in discussion regarding compelled testimony). However, use immunity and derivative use immunity are properly treated as separate components for purposes of a Kastigar hearing. Kastigar, 406 U.S. at 458-59 (naming use immunity and derivative use immunity as elements of immunity provided for by statute); United States v. Breeden, 149 Fed.Appx. 197, 201 (4th Cir. 2005) (distinguishing between use immunity and derivative use

immunity in discussing whether a Kastigar hearing was necessary).[8]

To determine whether Defendant is entitled to a Kastigar hearing at this juncture, the court must consider the terms of Defendant's proffer agreement with the Government. See, e.g., United States v. Pielago, 135 F.3d 703, 709-11 (11th Cir. 1998) (analyzing potential for Kastigar violation by parsing the terms of a proffer agreement under contract law as with plea agreements). Defendant's proffer agreement explicitly allows the Government derivative use of the information provided by Defendant. (Dkt. 12, Attachment 2, ¶ 3 (b)). A derivative use provision such as this allows evidence uncovered as a result of the compelled testimony to be used against the defendant. See United States v. Gecas, 120 F.3d 1419, 1464 (11th Cir. 1997); Pielago, 135 F.3d at 710-11. In Pielago, the Eleventh Circuit held that under a proffer agreement that allowed for derivative use, "[t]he government was only forbidden from introducing the defendant's statements and information she provided into evidence against her." Id. at 711.

Defendant does not argue that his own statements or information were directly used against him in obtaining the 2006 indictment.[9] Since Defendant did not receive immunity for derivative use

---

[8] See also United States v. Smith, 452 F.3d 323, 336-37 (4th Cir. 2006) ("Use immunity prevents the prosecution from directly utilizing immunized testimony itself; derivative use immunity is broader, and additionally precludes the use of evidence that may be derived therefrom") (citations omitted); United States v. Castaneda, 162 F.3d 832, 834 (5th Cir. 1998) (under grant of "use" but not "derivative use" immunity, "the government promised not to use any of the information or statements provided by [the defendant] directly against him in any criminal proceeding, but reserved its right to pursue investigative leads derived from [the defendant's] statements and use this 'derivative' evidence against him"); United States v. Dudden, 65 F.3d 1461, 1467 (9th Cir. 1995) ("'Use immunity' means that the compelled statements cannot be used against the defendant. 'Derivative use immunity' means that the government must derive all the information used as the basis for any prosecution of the defendant from sources wholly independent of the defendant's statements") (citations omitted).

[9] Defendant argues that he has no way of knowing what evidence the Government presented to the grand jury and implies that the Government's admitted direct use of Defendant's proffer

as part of his proffer agreement, a <u>Kastigar</u> hearing is unnecessary. <u>United States v. Catano</u>, 65 F.3d 219, 226 (1st Cir. 1995) (finding no <u>Kastigar</u> issue where use immunity rather than derivative use immunity was granted); <u>see also</u> <u>Breeden</u>, 149 ␣Fed.Appx. at 201 (no <u>Kastigar</u> hearing was necessary where proffer agreement allowed for derivative use and Defendant's statements were not used against him as direct evidence); <u>United States v. Smallwood</u>, 311 F.Supp.2d 535, 544 (E.D. Va. 2004) (defendant not entitled to a <u>Kastigar</u> hearing under plea agreement granting only use immunity, not derivative use immunity).

At oral argument, the Government conceded that the same IRS agent who testified before the grand jury which indicted Defendant in the earlier case also testified before the grand jury which returned the indictment in the instant case. Accordingly, the undersigned reviewed the grand jury testimony of IRS Special Agent Tammy Tomlins before the grand jury that returned Defendant's 2006 indictment.[10] The undersigned also questioned Agent Tomlins <u>in camera</u> on August 1, 2006. Based on these submissions, there is no evidence that statements or records obtained during Defendant's proffer were used as evidence before the grand jury.[11]

<u>Kastigar</u> applies not only to evidence used to indict but also evidence at trial. <u>See</u>, <u>e.g.</u>,

---

evidence in obtaining the 2003 indictment creates an inference that the Government made direct use of that evidence in obtaining the 2006 indictment. However, the fact that the Government acknowledged direct use of Defendant's proffer statements in obtaining the 2003 indictment does not create such an inference. Defendant presents no legal authority in support of this proposition. As stated subsequently, the undersigned has reviewed the agent's grand jury testimony and has questioned the agent <u>in camera</u> and finds that no direct use of Defendant's proffered statements or documents occurred.

[10] As discussed above, the Government filed this testimony under seal.

[11] <u>In camera</u> review of grand jury testimony and <u>in camera</u> questioning of the Government agent who presented such testimony is proper in situations where allegations of <u>Kastigar</u> violations are raised prior to trial. <u>United States v. Byrd</u>, 765 F.2d 1524, 1532-33 (11th Cir. 1985).

Pielago, 135 F.3d at 707-11. There is no evidence at this stage that the Government intends to use any of Defendant's proffered statements and documents obtained in 2003 at trial in its case-in-chief and, indeed, Defendant has cited no such evidence.

### III.   CONCLUSION

Having conducted a hearing on Defendant's motion to dismiss for speedy trial violation or motion for Kastigar hearing, and having considered the legal arguments of the parties, the court finds that Defendant's statutory and constitutional rights to a speedy trial have not been violated, nor has Defendant shown that a Kastigar hearing is appropriate or necessary at this time.

The undersigned **RECOMMENDS** that Defendant's **Motion to Dismiss for Speedy Trial Violation (Statutory and Constitutional) or in the alternative Motion for Kastigar Hearing and Motion to Dismiss** (Dkt. 8) be **DENIED**.

Date:   August 4, 2006

ELIZABETH A JENKINS
United States Magistrate Judge

Case Number: **Case No.: 8:06-CR-104-T-27EAJ**

**Notice to Parties**

Failure to file written objections to the proposed findings and recommendations contained

12

in this report within ten (10) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).


Copies to:
Counsel of Record
District Judge